

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| vs. § | Criminal Action No.: 1:17-174-MGL |
| § | |
| DAMON PEAKE, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
AND MOTION TO RELEASE PRESENTENCE INVESTIGATION REPORT**

**I.    INTRODUCTION**

Pending before the Court are Defendant Damon Peake's (Peake) motion for compassionate release and motion to release his presentence investigation report. Having carefully considered the motion, the response, the record, and the applicable law, it is the judgment of the Court Peake's motions will be denied.

**II.    FACTUAL AND PROCEDURAL HISTORY**

Peake pled guilty to possession with intent to distribute 500 grams or more of methamphetamine, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(A) (the Drug Count), and possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and (c)(1)(A)(i) (the Firearm Count).

At sentencing, Peake received a total offense level of thirty-three and a criminal history category of I, which resulted in a Guideline range of 135 to 168 months on the Drug Count and a

consecutive term of 60 months on the Firearm Count.  Based on the sentencing factors set forth in 18 U.S.C. § 3553(a) (Section 3553(a)), the Court granted a variance and sentenced Peake to a total of 180 months, followed by five years of supervised release.

Peake is housed at Federal Correctional Institution Edgefield (FCI Edgefield).  He has a projected release date of April 18, 2029.

Peake previously filed a motion for compassionate release, which the Court denied.  Peake later filed these motions.  The government responded, and Peake replied.  Having been fully briefed on the relevant issues, the Court will now adjudicate the motions.

### III.    MOTION FOR COMPASSIONATE RELEASE

#### A.    *Standard of Review*

After a defendant has exhausted his administrative remedies, "[a] district court analyzes [his] compassionate release motion in two steps." *United States v. Woody*, 115 F.4th 304, 310 (4th Cir. 2024).

"First, the [C]ourt must determine [the defendant] is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' for release." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (citing *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022)); 18 U.S.C. § 3582(c)(1)(A)(i).  In doing so, the Court shall consider whether the extraordinary and compelling reasons are "consistent with applicable policy statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A).

The applicable policy statement identifies six circumstances that, individually or in combination, may provide extraordinary and compelling reasons for a sentence reduction: (1) certain medical circumstances of the defendant; (2) the defendant's age and conditions related

to his age; (3) the defendant's family circumstances; (4) the fact the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, (5) the presence of "any other circumstance or combination of circumstances . . . similar in gravity to" other enumerated circumstances; and (6) the defendant received an "unusually long sentence[.]" United States Sentencing Guideline (U.S.S.G.) § 1B1.13.

"Second, the [C]ourt [must] consider[] whether the 18 U.S.C. § 3553(a) [(Section 3553(a)] sentencing factors support relief." *Moody*, 115 F.4th at 310 (citing *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023)). !!"District courts 'enjoy broad discretion' in evaluating the [Section] 3553(a) factors when deciding a motion for compassionate release." *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)).

B.   **Discussion and Analysis**

The government concedes Peake has exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining a defendant may bring a motion for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [(BOP)] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"). The Court will therefore turn to the merits of his motion.

1.   *Whether Peake presents extraordinary and compelling reasons warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)*

Peake contends his medical condition constitutes extraordinary and compelling reasons for compassionate release. Namely, Peake asserts he suffers from retinitis pigmentosa, a degenerative eye condition that has left him with no night vision, poor peripheral vision, and extremely limited daytime vision. Peake insists FCI Edgefield lacks handicap accessibility features and is therefore unable to treat individuals with severe visual impairments.

3

The government, on the other hand, maintains Peake has failed to demonstrate his medical condition is terminal, has substantially diminished his ability to provide self-care, requires long-term or specialized care, or increases his risk of contracting an infectious disease. Accordingly, the government asserts, Peake has neglected to establish extraordinary and compelling reasons warranting compassionate release.

Peake does not identify the portion of the policy statement upon which he relies. But, it appears only two provisions could apply here. That is, where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover[,]" U.S.S.G. § 1B1.13(b)(1)(B)(i), or (2) where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(D). The Court will consider each provision in turn.

First, even assuming retinitis pigmentosa is a serious physical or medical condition under the policy statement, Peake has nevertheless failed to demonstrate it substantially diminishes his ability to provide self-care within FCI Edgefield.

Peake contends he regularly misses evening meals because he is unable to navigate safely to the dining hall after sundown. But, the government emphasizes FCI Edgefield has provided Peake a guided walking cane and light magnifier to assist him. FCI Edgefield has also designated Peake to be assigned a bottom bunk given his diagnosis.

Nor has Peake established he is unable to perform the activities of daily living. *See United States v. Gamboa*, No. 3:02-cr-47, 2024 WL 639882, at *3 (D.N.D. Feb. 15, 2024) ("Courts generally rely on an inmate's ability to perform activities of daily living to determine whether the

inmate can provide self-care. The relevant activities can include walking, eating, using the toilet, getting dressed, and taking medication." (internal citations omitted)).

Rather, medical records indicate Peake has been compliant with his medication regimen. On November 20, 2023, the Warden of FCI Edgefield opined Peake "can provide self-care and [retinitis pigmentosa] does not significantly affect [his] ability to function in a correctional setting." BOP Administrative Denial at 1. More recently, on July 14, 2025, Peake's optometrist discussed visual aids to assist with his progressing condition. And, as noted above, FCI Edgefield has provided such aids.

For all these reasons, the Court is unconvinced Peake's medical condition has substantially diminished his ability to provide self-care within FCI Edgefield.

The Court is further unpersuaded Peake is suffering from a medical condition that requires long-term or specialized care the BOP has neglected to provide.

According to information cited by the government, "[t]here is no effective treatment or cure for [retinitis pigmentosa]." UVA Health, *Retinitis Pigmentosa*, https://uvahealth.com/services/eye-care/retinitis-pigmentosa (last visited Oct. 10, 2025). Instead, available treatment options for retinitis pigmentosa, such as light avoidance and prescription glasses, "aim[] to help [individuals] function with the vision [they] have." *Id.* In other words, long-term or specialized care is neither tenable nor required for retinitis pigmentosa.

Nevertheless, Peake's medical records demonstrate the BOP is adequately treating his declining vision through prescription eyeglasses, a guided walking cane, and a light magnifier.

Peake maintains the stress of living at FCI Edgefield—which he contends is unequipped for severe visual impairments—has caused him serious migraines and anxiety. But, again, Peake's

medical records indicate the BOP is appropriately managing these symptoms through prescription medication.

In April 2022, Health Services prescribed Peake Fluoxetine for anxiety and Propranolol for migraines. At a follow up two months later, Peake reported these medications failed to alleviate his symptoms. Health Services thus discontinued Fluoxetine, prescribed Buspirone for anxiety, increased the frequency of his Propranolol, and prescribed Ibuprofen for migraines. This combination relieved Peake's symptoms for about six months, but he soon experienced heightened anxiety. Health Services therefore increased Peake's dose of Buspirone. Since this increase, Peake has remained stable with no reports of anxiety or migraines.

Although the Court is sympathetic to Peake's diagnosis, for the reasons set forth above, the Court determines his medical condition fails to constitute an extraordinary and compelling reasons warranting compassionate release.

### 2. *Whether the Section 3553(a) factors weigh in favor of a sentence reduction*

Even if the Court determined extraordinary and compelling circumstances exist in this case, analysis of the Section 3553(a) factors would nevertheless preclude any reduction in Peake's sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining the Court may grant compassionate release only "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable"). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes by the defendant;
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

>   (3)   the kinds of sentences available;
>   (4)   the kinds of sentence and the sentencing range established for [the offense] . . . ;
>   (5)   any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
>   (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>   (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Peake pled guilty to serious offenses. He distributed methamphetamine on three separate occasions to a cooperating witness and confidential informant. And, during one of the transactions, Peake possessed a shotgun and told the confidential informant he was prepared if someone walked through the door of his apartment. Indeed, a search of Peake's apartment in Aiken, South Carolina, and home in Graniteville, South Carolina, revealed over 800 grams of methamphetamine, varying quantities of crack cocaine and marijuana, pills, drug paraphernalia, $72,000.00 in U.S. currency, an undisclosed sum of counterfeit currency, thirty-six firearms, and multiple rounds of ammunition in various calibers.

Although Peake has failed to obtain any disciplinary infractions while in custody, for which the Court commends him, he has done no more than the Court hopes of every defendant. *Cf.* 28 U.S.C. § 994(t) (explaining "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason").

Additionally, Peake's sentence fails to create any unwarranted disparity among defendants in similar circumstances. Peake's Guideline range resulted in a total sentence of 195 to 228 months on both counts. But, the Court granted a variance and sentenced him to 180 months.

Thus, upon balancing the Section 3553(a) factors, the Court determines Peake is unentitled to a sentence reduction, as his current sentence is sufficient but no longer than necessary to promote respect for the law, provide adequate deterrence, and reflect the seriousness of his offense, and it

is a just punishment in this case. The Court will therefore deny Peake's motion for compassionate release.

### IV.     MOTION TO RELEASE PRESENTENCE INVESTIGATION REPORT

Peake also requests the Court allow his plea counsel to release a copy of his presentence investigation report (PSR) to Jail Time Consulting. Peake states he is working with Jail Time Consulting, an inmate advocacy organization, to determine his eligibility for BOP programs.

Peake's PSR is a confidential document, so there is a presumption against disclosure to third parties. *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 12 (1988) ("[C]ourts have typically required some showing of special need before they will allow a third party to obtain a copy of a presentence report."). Namely, it "should not be disclosed . . . unless lifting confidentiality is required to meet the ends of justice." *United States v. Figurski*, 545 F.2d 389, 391 (4th Cir. 1976) (quoting *Hancock Brothers, Inc. v. Jones*, 293 F. Supp. 1229, 1233 (N.D. Cal. 1968)). Here, the Court determines Peake has neglected to demonstrate lifting confidentiality is required to meet the ends of justice. *See, e.g.*, Guide to Judiciary Policy Vol. 8D, Ch. 5 § 510(d) (explaining disclosure is proper where the Court determines there is a compelling need for it). The Court will thus deny Peake's motion to release his PSR. Peake does, however, remain able to review his PSR within the BOP.

### V.      CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Peake's motion for compassionate release, ECF No. 89, and motion to release his PSR, ECF No. 90, are **DENIED**.

**IT IS SO ORDERED.**

Signed this 10th day of October 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
